FOREST GREEN FARMERS ELEVATOR COM-PANY, a corporation, Respondent, v. JAMES C. DAVIS, Director General of Railroads, the Designated Agent Provided for in Sec. 206 of the Transportation Act of 1920 (Upon a Cause of Action Arising Out of the Operation of the Missouri Pacific Railroad Company, a Corporation), Appellant.*

St. Louis Court of Appeals.   Opinion Filed February 3, 1925.

1.  CARRIERS: Carriers of Freight: Interstate Commerce Act: Carmack Amendment: Initial Carrier: Liability. Where wheat was shipped from a point in Missouri, and delivered to a carrier for transportation, consigned to plaintiff at St. Louis, Missouri, with no intention on plaintiff's part to ship beyond State lines, but was sold and reshipped under a new bill of lading to a point in Illinois, the shipment to St. Louis was not part of a continuous interstate shipment, and the carrier by which the shipment from St. Louis to Illinois was made became the initial carrier of the shipment, within Carmack Amendment, and this *status* was not affected by the sale of the car to be unloaded at final mill weights.

2.  ————: ————: ————: ————: Wheat Sold to be Unloaded at Final Mill Weights: Owner Retains Interest: May Sue for Loss of Wheat in Transit. Where wheat shipped to St. Louis was sold to be unloaded at final mill weights, and reshipped by purchaser's agent, to purchaser under a new bill of lading, the original owner, in view of the Carmack Amendment, 34 Stat. at L. 584, 595 (U. S. Comp. St., secs. 8604a, 8604aa) retains such interest in the shipment as constituted it a proper party plaintiff in an action for the loss of the wheat in transit.

216 M. A.—35

3. **INSTRUCTIONS: Carriers: Petition: Negligence: Instruction Not Hypothesizing Negligence in Loss of Wheat as Pleaded: Erroneous.** Where the petition in an action for loss of wheat in transit was based on the carrier's negligence, and not on contract, an instruction which was not hypothesized on negligence and peremptorily required a finding for plaintiff if the jury found that certain quantity of wheat was delivered to carrier, and the car on delivery to consignee contained a less amount, was erroneous.

4. ———: ———: ———: ———: **Instruction Authorizing Jury to Go Beyond Petition and Proof: Erroneous.** In an action against a carrier for loss of wheat in transit, an instruction which failed to limit recovery to the amount of wheat claimed to have been lost as shown by the pleadings, and evidence, was erroneous; the jury being authorized thereby to go beyond the petition and the proof.

5. **CARRIERS: Carriers of Freight: Action for Damages: Wheat Lost in Transit: Petition: Construction.** In an action for damages against a carrier, where wheat was lost in transit, the petition which alleged delivery to the original carrier for transportation to plaintiff at St. Louis, and that it was sold in transit and reconsigned to a purchaser in Illinois, when construed as a whole, *held* that it contains allegations from which it may be inferred that the car of wheat was delivered to defendant under a new contract and as initial carrier.

6. **DAMAGES: Wheat Lost in Transit: Measure of Damages Stated.** Under the Cummins Amendment of March 4, 1915, chapter 176, 38 Stat. 1196 (U. S. Comp. St., secs. 8592, 8604a), which provides that the carrier shall be liable for the full actual loss, damage or injury, shipper's measure of damages for loss of wheat in transit, *held* market value of wheat at point of origin or at destination, less unpaid freight, but not exceeding price for which wheat had been sold by shipper: "full actual loss, damage or injury" meaning actual loss, damage or injury sustained within contemplation of the parties.

7. **RAILROADS: Federal Control: Actions for Damages: Interest: Not Recoverable.** In an action for damages against a carrier for loss of wheat in transit while the railroad was under federal control, *held* interest was not recoverable.

---

*Headnote 1. Carriers, 10 C. J., Sections 844, 858; 2. Carriers, 10 C. J., Section 523; 3. Carriers, 10 C. J., Section 603; 4. Carriers, 10 C. J., Section 603; 5. Carriers, 10 C. J., Section 537; 6. Carriers, 10 C. J., Sections 605, 606, 621; 7. Carriers, 10 C. J., Section 613.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Wilson A. Taylor,* Judge.

REVERSED AND REMANDED.

*James F. Green* and *M. U. Hayden* for appellant.

(1) The petition averred that respondent's damage was due to the negligence of appellant. Unless, therefore, the Missouri Pacific Railroad Company was the initial carrier, the burden rested upon respondent to establish by the preponderance of the evidence that the loss of the wheat occurred while the car was in the possession of appellant and as the result of its negligence. Railway Co. v. Produce Co., 42 Sup. Ct. Rep. 328. (2) If the view be taken that, after the wheat reached St. Louis, a new contract was entered into for the transportation of the wheat from St. Louis to Chester, Illinois, whereby appellant became the initial carrier of an interstate shipment so as to render it liable under the Carmack Amendment for respondent's loss without proof of where the loss occurred, then respondent cannot maintain this suit for the reason that it was not a party to such new contract and at that time was not the owner of the wheat. Carmack Amendment, 34 Stat. at L. 584; Adams Express Co. v. Croninger, 226 U. S. 491; 5 Elliott on Railroads (3 Ed.), sec. 2703; Barr & Wiseman v. Railroad Co., 181 Mo. App. 88; Bowden v. Railroad Co., 91 Atl. 209; Railroad Co. v. Sarris, 95 So. 903; 3 Hutchinson on Carriers, sec. 1320; Dalbey & Co. v. Railway Co., 105 S. W. 1154. (3) The petition avers and the proof establishes that this shipment originated at Forest Green, Missouri; that originally the point of destination was St. Louis and that while the wheat was in transit it was sold and reconsigned to Chester, Illinois. It was, therefore, a continuous interstate shipment originating in Missouri and terminating in Illinois. There is no conflict in the evidence that appellant received the wheat from the Wabash Railroad Company and delivered it to the Wa-

bash, Chester & Western Railroad Company and was therefore an intermediate carrier. Under these circumstances the loss is presumed to have occurred while the car was in charge of the terminal carrier. The burden therefore rested upon respondent of proving that the loss occurred while the wheat was in the possession of appellant and there being a failure of proof of where the loss occurred respondent cannot sustain this judgment. C. & N. W. Ry. Co. v. Produce Co., 42 Sup. Ct. Rep. 328. (4) The giving of instruction No. 1 at the instance of respondent was reversible error. It broadened the issues averred in the petition and was beyond the scope of the evidence. State ex rel. Long v. Ellison, 272 Mo. 571; State ex rel. Coal Co. v. Ellison, 270 Mo. 645; Hall v. Coal & Coke Co., 260 Mo. 351. (5) The giving of instruction No. 2 was reversible error. It submitted an erroneous measure of damages and improperly permitted the jury to allow interest upon the amount of its verdict. Railway Co. v. McCaull-Dinsmore Co., 253 U. S. 97; Insurance Co. v. Payne, 243 S. W. Rep. 360.

*W. W. Schiek* and *Wilbur C. Schwartz* for respondent.

(1) (a) Under the pleadings there was no burden upon respondent to prove that the loss of the wheat occurred while the car was in possession of the appellant, and as the result of its negligence. Upon the issuance of the bill of lading for transportation of the car from St. Louis to Chester, Illinois, appellant was, to all intents and purposes, the initial carrier. Georgia Railway Company v. Bleish Milling Company, 241 U. S. 190. (b) Where a shipment is diverted over another line after it reached its original destination, such diversion constitutes a new contract. Deatwyler v. Oregon Railway Co., 176 Ill. 597. (2) (a) One who has a special property or interest in the goods shipped, or a beneficial interest in the performance of the contract, is entitled to maintain an action for their loss or injury. Wall v. St. Louis etc. Ry. Co., 182

S. W. 1057. (b) As the respondent was to have been paid for the wheat upon the basis of the quantity unloaded at destination, it was the owner and retained a special property right in the shipment, and as the only damage which could have been suffered as a result of the thing complained of was that suffered by respondent, it was a proper party to bring the action. Grove v. Brien, 8 How. U. S. 129; Coal Co. v. L. & N. Railway Co., 60 S. 698. (c) The fact that a consignor of goods to himself as consignee sold the goods on arrival at destination at a specified price per pound would not divest or deprive him of the right to recover for the loss of the goods in transit, although he directed delivery of the goods to his buyer and delivered the bill of lading to him, inasmuch as the buyer was liable only for the goods actually delivered. Alason v. Railway Company, 163 Iowa, 449. (d) Where the consignee had no special or general property in goods consigned to him and incurs no risk in their transportation he cannot maintain an action against the carrier for loss or injury to the goods. Nathan v. Missouri Pacific Railway Co., 135 Mo. App. 46. (3) (a) Although the Carmack Amendment renders the initial carrier liable for loss or injury to interstate shipments which it has accepted for transportation, regardless of whether the loss or injury occurred on its line or that of any connecting carrier over which the shipment is transported, such statute does not have the effect of abrogating the liability of an intermediate or terminal carrier to another to recover for loss or injury occurring on its line. Any damage occurring on a connecting carrier's line may, notwithstanding the Carmack Amendment, be recovered in an action brought directly against the carrier causing the injury, or against such carrier and the initial carrier. Otrich v. Railway Co., 154 Mo. App. 420; Georgia Railway Co. v. Milling Co., 241 U. S. 190. (b) Under the Carmack Amendment, whenever an initial carrier sends goods for a shipment to a point in another State it is conclusively treated as having made a through contract of shipment and will be liable for any

loss or injury occurring on any connecting line over which such shipment may pass, and the liability of the initial carrier under the statute is the same as if it owned a continuous line from the point of shipment to the point of destination, or, as otherwise expressed, its effect is to make the connecting carrier the agent of the initial carrier, the same as if it had contracted for through carriage to the point of destination. Carmack Amendment, 34 U. S. Stat. at Large 595, page 3591, Sec. 7; Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639; Express Company v. Croninger, 226 U. S. 491; Galveston Railway Co. v. Wallace, 223 U. S. 481. (4) The recital of the bill of lading as to the receipt of goods places the burden on the carrier to show the contrary, and in the absence of convincing testimony establishing mistake such recital must control. 10 Corpus Juris 197; Sandford v. Railway Co., 79 S. C. 519; Musselman v. Railway, 104 S. W. 337; Railway Co. v. Nelson, 97 S. W. 757. The liability of the carrier begins as soon as the delivery is completed, so as to place on the carrier the exclusive duty of seeing after its safety, and such liability is not affected by any delay on the part of the carrier of placing the goods in transit. It is a question for the jury as to whether the goods were delivered to the carrier. Reading v. Railway Co., 188 Mo. 41; Insurance Co. v. Railway Co., 144 N. Y. 200; Railway Co. v. Tobacco Co., 126 Ky. 582; Lackland v. Railway Co., 134 S. W. 1070; Brown v. Eldredge, 100 Mass. 455; Ames v. Fargo Express Co., 114 N. Y. App. Div. 699.

DAVIS, C.—This is an action for damages against the Director General of Railroads, as designated agent operating the Wabash Railroad Company, and as designated agent operating the Missouri Pacific Railroad Company, for the loss in transit of 26,696 pounds of wheat, the petition containing a general allegation of negligence. At the close of plaintiff's case the action as to the Director General of Railroads operating the Wabash Railroad Company was dismissed by plaintiff. The cause

proceeding as to the Director General of Railroads operating the Missouri Pacific Railroad Company, hereinafter called defendant, the jury returned a verdict for plaintiff against defendant for $1144.76, including damages and interest, and from the judgment entered thereon defendant appealed.

Plaintiff's evidence tends to show that it is a corporation domiciled at Forest Green, in Chariton County, Missouri, on the line of the Wabash Railroad Company; that on or about July 21, 1919, plaintiff delivered to the Wabash Railroad Company at Forest Green a carload of wheat containing 87,946 pounds of No. 2 red; the wheat was loaded in Pennsylvania car 549804, and was delivered to said Wabash Railroad Company for transportation consigned to plaintiff at St. Louis, Missouri, "Notify Hunter Grain Company." The bill of lading for transportation from Forest Green to St. Louis was issued by the Wabash Company, which acknowledged receipt of the wheat in question on July 21, 1919; that upon arrival of this wheat in St. Louis it was sold by the Hunter Grain Company, acting as plaintiff's agent, to the H. C. Cole Milling Company at Chester, Illinois; that to the original bill of lading, issued by the Wabash Railroad Company, was attached a draft, which the Hunter Grain Company took up, delivering the bill of lading to Martin & Company, grain brokers and agent for the H. C. Cole Milling Company; that on or about July 25, 1919, defendant issued a bill of lading acknowledging receipt from Martin & Company of this car of wheat consigned to H. C. Cole Milling Company, Chester, Illinois; that the weight of the wheat, subject to correction, was therein stated to be 87,960 pounds; that defendant transported the carload of wheat from St. Louis, Missouri, and delivered it to H. C. Cole Milling Company at Chester, Illinois, on August 14, 1919, on which date the contents of the car were weighed and found to weigh only 61,250 pounds; that upon arrival of the car at Chester it was found leaking between the grain doors and at the bottom of the grain doors of the car; that it leaked at the grain

doors on each side of the car; that the grain leaked at these doors, but the doors did not bulge, and that the car was not leaking at any other point; that the witness who testified to the leaking stated that he would think it was defective cooperage which caused the leaking; that the car was inspected upon arrival at St. Louis and while in the Luther yards of the Wabash Railroad Company by the supervisor for the Merchants Exchange, who examined the car, to find evidence of leakage or defects that would cause leakage; that when he inspected this car it was perfectly o. k.; that he did not open the car, although the samplers had opened it.

Witness Hunter, for plaintiff, stated that he had seen the railroad company 20,000 pounds under their track scale weights, under what their car unloads at destination, many times; that the car was sold to be unloaded at final mill weights.

Plaintiff's evidence does not tend to show at what point the wheat began leaking from the car, but it does tend to establish that, when the car was inspected on arrival at St. Louis and while it was in the Luther yards of the Wabash Railroad Company, there was no evidence of any leakage.

Defendant's evidence tends to show that it did not have any track connection with the plant of the H. C. Cole Milling Company at Chester, Illinois, and that all freight consigned to the H. C. Cole Milling Company, at that time, was delivered to the Wabash, Chester and Western Railroad at Menard, Illinois, one mile from Chester; that the freight inspector and weighmaster of the Western Weighing Inspection Bureau, stationed, at that time, at the Wabash Luther Station in North St Louis, on or about August 1, 1919, weighed Pennsylvania car 549804 in Luther yards, containing wheat, and the record kept by him in his own handwriting shows and he stated that the weight of the contents of that car was 61200 pounds net, that is that the contents of the car weighed 61200 pounds; that this was subsequent to the issuance of the bill of lading by defendant, but prior to

the actual delivery of car 549804 to defendant; that the bill of lading issued by defendant was made out by Martin & Co., and the weight of 87960 pounds specified therein was copied from the bill of lading issued by the Wabash Railroad Company.

Such further facts as are pertinent, if any, will later appear.

The salient portion of the petition is as follows:

"For cause of action plaintiff states that on or about July 21, 1919, it did, at Forest Green, Missouri, deliver to the aforesaid Director General of Railroads in charge of the Wabash Railroad for transportation to itself at St. Louis a carload of wheat contained in car Penn. 549804, and that the said car contained at the time and at the place of delivery to the said Director General as aforesaid, 87,946 pounds of No. 2 red wheat, and that the said car at the time of said delivery was in good order.

"Plaintiff further states that the car of wheat aforesaid was sold in transit by plaintiff through its agent, Hunter Grain Company of St. Louis, and that the destination of the said car was changed and the same reconsigned to the Cole Mining Company, Chester, Illinois.

"Plaintiff states that upon arrival of the said car of wheat and delivery of it by the Director General of Railroads in charge of the Missouri Pacific Railroad at Chester, Illinois, the same contained only 61,250 pounds of No. 2 red wheat, and that plaintiff, due to the negligence of defendant, suffered a loss of 26,696 pounds of the said wheat.

"Plaintiff states that the loss of the said wheat occurred either while the same was in transit and in charge and custody of the Director General of Railroads in operation of the Wabash Railroad Company from Forest Green to St. Louis, Missouri, or while in charge and custody of the said Director General of Railroads in the operation of the said Missouri Pacific Railroad Company while the said wheat was in transit from St. Louis, Missouri, to Chester, Illinois. Plaintiff avers that it by lack of information cannot state where the said loss occurred

or the amount of loss which may have occurred while in possession and in charge of either the Missouri Pacific Railroad Company or the Wabash Railroad Company, and for that reason is compelled to plead in the alternative, but that it believes and avers that one or the other of the said alternatives is true.''

I. Defendant assigns error on the part of the trial court in letting plaintiff's instruction No. 1 go to the jury. It is as follows:

''The court instructs the jury that if you find and believe from a preponderance or greater weight of the evidence in this case that the plaintiff did on July 21, 1919, deliver to defendant, James C. Davis, Director General of Railroads, in charge of the operation of the Wabash Railroad, for transportation to St. Louis, car No. 549804, Pennsylvania, and that the same at the time of said delivery contained 87,946 pounds of No. 2 red wheat belonging to the plaintiff, provided you find and believe that plaintiff loaded into said car at Forest Green, Missouri, the said amount of wheat, and that same arrived in St. Louis, provided you find it did so arrive on said date, it was delivered to James C. Davis on or about July 24, 1919, as Director General, in charge of the operation of the Missouri Pacific Railroad, for shipment to the H. C. Cole Milling Company, Chester, Illinois, and that the same when delivered to the said James C. Davis, in charge of the operation of the Missouri Pacific Railroad, contained 87,946 pounds of No. 2 red wheat, and that the said car upon its arrival at Chester, Illinois, and upon delivery to the consignee named in the bill of lading contained less than the amount of wheat which you find and believe from the preponderance or the greater weight of the evidence was contained in the said car at the time it was delivered to the said James C. Davis, in charge of the operation of the Missouri Pacific Railroad Company, for transportation to Chester, Illinois, then you will find in favor of the plaintiff, unless you find and believe from the evidence that the difference between

the amount of wheat actually received at Chester and the amount which was delivered at St. Louis to the said James C. Davis, Director General, in charge of the operation of the Missouri Pacific Railroad, was a loss caused by an act of God or a public enemy and provided you further find that plaintiff was not negligent in the loading of the said car.''

It is contended generally that the above instruction broadened the issues alleged in the petition, and was beyond the scope of the evidence. This instruction proceeds upon the theory that the defendant was the initial carrier, and therefore liable for any loss without reference to whether the loss occurred on its line or on the line of a connecting carrier. Defendant contends, however, that, according to the pleadings and the proof, the commerce was interstate, because the shipment originated in Forest Green, Missouri, and terminated in Illinois. If the contention that continuity of movement continued from Forest Green to Illinois is sound it is because the car was sold to be unloaded at final mill weights, wherein plaintiff retained some interest as owner of the wheat under the bill of lading issued by defendant for the transportation of said car of wheat from St. Louis, Missouri, to Chester, Illinois.

Cases are extant laying down rules by which it may be determined whether a shipment is intrastate or interstate. In Louisiana R. R. Comm. v. T. P. Ry., 229 U. S. 336, l. c. 341, it is said: ''The principle enunciated in the cases was that it is the essential character of the commerce, not the accident of local or through bills of lading, which determines Federal or State control over it. And it takes character as interstate or foreign commerce when it is actually started in the course of transportation to another state or to a foreign country.''

In Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111, l. c. 124, the court say: ''That there must be continuity of movement we may concede, and to a foreign destination intended at the time of shipment.''

In State ex rel. Pub. Serv. Com., 269 Mo. 63, l. c. 71, 189 S. W. 377, it is said: "Applying the elementals noted, we find that an interstate shipment exists when a commodity has been turned over by a shipper to a common carrier to be transported from one State to another, the definite character of such shipment being fixed when the movement of the commodity has commenced for the purpose of transportation."

The facts in the instant case demonstrate that the original bill of lading provided and the intention of the shipper obtained, that the original transportation was from Forest Green in this State to St. Louis in this State only. This constituted the original shipment from Forest Green to St. Louis intrastate under the facts and ruling in State ex rel. Pub. Serv. Com. Co., supra, unless plaintiff in selling the car to be unloaded at final mill weights retained such interest as to constitute this a continuous shipment from Forest Green, Missouri, to Chester, Illinois. We do not think this follows, for at the time the shipment left Forest Green the evidence does not demonstrate an intention on plaintiff's part to ship beyond State lines, and we take it that the intention of the parties in the instant case controls.

The original shipment over the Wabash lines was intended to terminate and did terminate at St. Louis, the original destination. The contract was fully carried out and completed. There was nothing further to be done under it. That the car of wheat was then sold and carried into interstate commerce under a new, independent and separate contract does not and cannot affect the original contract of shipment or determine the character of the commerce interstate from its inception, because it was not the intention of the shipper at the time of the shipment from Forest Green to send it beyond the State line. Nor do we think the sale of the car at final mill weights affected the *status* or character of the original shipment so as to determine the shipment from its inception at Forest Green interstate. The accident of the loss of the wheat did not determine the title to the wheat

in the car. The entire contents of the car, upon its sale, vested in H. C. Cole Milling Co., subject to remuneration at unloading weights. On the other hand, plaintiff's right to receive compensation for the lost wheat, if legally justified, obtained, for it retained an interest of ownership to that extent.

The facts demonstrate that the car of wheat was sold in St. Louis by plaintiff's selling agent, Hunter Grain Company, to Martin & Co., purchasing agents for H. C. Cole Milling Co. of Chester, Illinois. The bill of lading was issued by defendant to Martin & Co. as consignor, with H. C. Cole Milling Company as consignee therein. If this became a new shipment, the Carmack amendment, 34 Stat. at L. 584, then became operative. We think it so follows. With this situation determined, to-wit, that defendant became the initial carrier of the shipment from St. Louis, Missouri, to Chester, Illinois, it then becomes the contention of defendant that plaintiff cannot maintain this suit, because it was not a party to such new contract, and was not at that time the owner of the wheat. To this contention we do not assent, for we think it appears that the car of wheat was sold to be unloaded at final mill weights, and that plaintiff retained such an interest of ownership in this interstate shipment as to constitute it a proper party plaintiff. [10 C. J., p. 345, par. 507 et seq.; Dalbey & Co. v. Ry. Co., 105 S. W. 1154.] We have no hesitancy in reaching this conclusion, for the H. C. Cole Milling Co., in failing to object after knowledge of this suit and in paying only for the wheat actually unloaded, has become estopped from maintaining a claim for the lost wheat. Inasmuch as the wheat was sold at final mill weights the vendee became obligated to pay for the amount of wheat only that the car contained at destination. If the wheat was lost in transit and plaintiff's evidence tends to show that it leaked out between St. Louis and Chester, plaintiff's interest in the lost wheat was sufficient to permit it to maintain an action against defendant as initial carrier for the loss. While plaintiff's manager stated that he was sent

a draft for the wheat first for the full price of it, yet he further stated, ''and after it went this way they checked on me again for the difference.'' However, we think the above instruction contains error. The petition is grounded on negligence and not on contract, for it pleads that plaintiff, due to the negligence of defendant, suffered a loss of 26,696 pounds of wheat. The instruction is not hypothesized on negligence, and peremptorily requires the jury to find for plaintiff if 87,946 pounds of wheat were delivered to defendant, and the car on delivery to the consignee contained a less amount of wheat than when delivered to defendant. This instruction might not be error if the action was for breach of contract, but as the petition pleads negligence the instruction should contain a hypothesis of facts, which of themselves, if true, would show negligence. Again, the instruction failed to contain a limitation with respect to the amount of wheat which was claimed to have been lost as shown by the pleadings and the evidence. The jury is authorized by the instruction to go beyond the petition and proof. As the case is to be retried and the instruction necessarily redrawn, the complaint as to the dates stated therein will undoubtedly be corrected.

While the number of pounds in a bushel of wheat may possibly be inferred from the evidence, or while it may be possible that we can take judicial notice thereof, we do not find direct evidence to that effect in the record, and suggest on a retrial that the situation be obviated.

We have had some difficulty in determining whether plaintiff's petition is unequivocally bottomed on the theory of a continuous interstate shipment from Forest Green to Chester. The petition, after stating delivery to the Wabash, states that the car of wheat was sold in transit and reconsigned to Cole Milling Company, Chester, Illinois, and that upon arrival and delivery of it by defendant at Chester, Illinois, etc. The word ''consign'' in this connection is defined ''to transmit by carrier.'' The petition again alleges that plaintiff delivered to the

Wabash Railroad for transportation to itself at St. Louis a carload of wheat. Construing the petition as a whole, we are of the opinion that it contains allegations from which it may be inferred that the car of wheat was delivered to defendant under a new contract and as initial carrier. The petition, however, is inartifically drawn, and plaintiff may, if so advised, redraft same.

II. Defendant complains of the giving of plaintiff's instruction No. 2. It is as follows:

"The court instructs the jury that if you find in favor of plaintiff you will assess its damages on the basis of the market price of No. 2 red wheat which you find and believe from the evidence prevailed at St. Louis, Missouri, on the date of its sale and consignment to Chester, Illinois, with six per cent interest from August 16, 1919, less the freight from Forest Green, Missouri, to Chester, Illinois, as shown by the evidence upon such difference in the amount of wheat as you find and believe from the evidence defendant received from plaintiff at St. Louis, Missouri, and the amount of wheat in the car mentioned and described in evidence upon its arrival in Chester, Illinois, or 20½ per hundred pounds."

The Cummins Amendment of March 4, 1915c. 176, 38 Stat. 1196 (Comp. St. 8604a), which controls, provides that the carrier shall be liable for the full actual loss, damage or injury. We do not think that Railway Company v. McCaull-Dinsmore, 253 U. S. 97, 40 Sup. Ct. Rep. 504, construes the above statute as unequivocally limiting the measure of damages to the market value of the commodity at destination. By the words, "full actual loss, damage or injury" is meant the actual loss, damage or injury sustained within the contemplation of the parties." Unless the testimony tends to show that defendant knew that the wheat had been sold at a certain price, such contract price was not within the contemplation of defendant. Therefore, plaintiff's measure of damages, if permitted to recover, is the market value of

the wheat either at St. Louis, the point of origin, or Chester, the point of destination, less the freight between such points, if unpaid, the market value, however, not to exceed the contract price per bushel at which the lost wheat was sold to the Milling Company. Plaintiff is necessarily limited to the contract price per bushel, because plaintiff's actual loss, under the circumstances of this case, could not exceed the contract price at which the wheat was sold.

The instruction should not have authorized interest. In Insurance Company v. Payne, 243 S. W. 360, it is said: "Again, plaintiff's instruction No. 2 was erroneous in allowing interest, for the suit is against a representative of the Government and in reality against the Government itself, and interest cannot be given unless it is allowed by statute, or the Government has stipulated to pay interest, neither of which was done. . . . Nor is it proper, under our statutes, to allow interest on sums recovered for torts."

The Commissioner recommends that the judgment be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of DAVIS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Daues, P. J.,* and *Nipper, J.,* concur; *Becker, J.,* in result.