NEWTH-MORRIS BOX CORPORATION, TO USE OF AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT *v.* PENNSYLVANIA RAILROAD COMPANY

[No. 49, October Term, 1950.]

120

*Decided February 7, 1951.*

*David R. Owen,* with whom were *Semmes, Bowen & Semmes,* on the brief, for appellant.

*Hall Hammond* and *Clayton W. Daneker,* for appellee.

MARBURY, C. J., delivered the opinion of the Court.

There are two Newth-Morris Box Corporations. One is a Maryland corporation, to the corporate name of which is added the words "of Maryland". The other is a South Carolina corporation, the name of which is similarly suffixed with the words "of South Carolina". Each corporation is engaged in the manufacture of cardboard boxes and partitions, the majority stock of each is owned by the same individuals, and the same persons are officers of each company, but each corporation is a separate entity.

On June 7, 1948, the Maryland corporation delivered to the Pennsylvania Railroad a freight car loaded with pulp board and pulp board partitions, receiving therefrom a non-negotiable bill of lading which recited that the shipper was Newth-Morris Box Corporation of a Baltimore address and that the consignee was Newth-Morris Box Corporation of a Charleston, South Carolina address. The car travelled on the Pennsylvania Railroad to Alexandria, Virginia, and thence by the Atlantic Coast Line Railroad to its destination. When it was opened at Charleston, it was discovered that the contents were damaged, which it was claimed occurred en route. It was estimated by the manager of the South Carolina plant that this damage amounted to $1,968.80. On June 28, 1948, the South Carolina corporation filed a claim against the Atlantic Coast Line for that amount.

On June 7, the Maryland corporation mailed to the South Carolina corporation an invoice for $5,187.30 for the shipment. This was paid by the South Carolina corporation on June 22. On June 16, the South Carolina corporation also paid the freight bill.

At the time of the loss the Maryland corporation was insured in the Automobile Insurance Company for dam-

age to incoming and outgoing shipments by railroads. It filed a proof of loss with its insurer for $1,968.80 and a release in which it subrogated the insurer to all of its rights against third parties. On November 12, 1948, the Maryland corporation received a check from its insurer for the full amount. The check was endorsed by the Maryland corporation to the South Carolina corporation, and deposited in the account of the latter.

Suit was then brought in the Court of Common Pleas of Baltimore. The final amended declaration is by the Maryland corporation to the use of the insurer against the Pennsylvania Railroad. It contains a count in tort alleging the negligence of the defendant in damaging the goods and a count in contract on the bill of lading for failure to perform the contract of carriage. No proof was offered to show that the Pennsylvania Railroad was in charge of the goods when they were damaged. The case was tried on the contract count. At the conclusion of the plaintiff's case, the trial court instructed the jury that there was no evidence offered legally sufficient to enable the plaintiff to recover against the Pennsylvania Railroad and that their verdict must be for the defendant. On this verdict judgment was entered for the defendant for costs, and the plaintiff appealed.

One other fact is important. The bill of lading issued by the Pennsylvania Railroad was issued to the Maryland corporation, and was held by it at the time the suit was brought, and at the time the trial was held, and has never been assigned by it. It was what is known as a "straight" bill of lading, which is not negotiable and does not carry with it the title to the shipment. It is a contract of shipment made by the carrier and the consignor, but it is not necessary that it be held by or assigned to the consignee before the latter can claim the goods shipped.

It should also be noted that during the trial the plaintiff offered to enter the suit to the use of the South Carolina corporation as well as to the use of the Insurance Com-

pany, but the court refused to allow this amendment of the declaration.

The theory upon which the trial court granted a demurrer prayer and directed a verdict for the railroad was that the Maryland corporation had been paid for the damaged goods twice—first by the Carolina corporation, and then again by the insurance company, the last payment having been at once transferred to the Carolina corporation. Therefore, the court reasoned that the insurance company was the one out of pocket, and the Maryland corporation had no claim against the railroad. The insurance policy did not cover the South Carolina corporation, which had accepted the damaged goods and paid the Maryland corporation for them in full. The inference is that the court thought the Carolina corporation was the party having the claim, and that the payment by the insurance company to the Maryland corporation was voluntary, and did not entitle it to an assignment, and that the assignment having been made by a party which had no claim, it assigned nothing.

Prior to the Carmack Amendment to the Interstate Commerce Act (49 U. S. C. A. § 20(11) ), a shipper whose goods were damaged during interstate transportation had to sue the carrier in whose custody they were when the damage occurred. If such carrier was not the one with which the shipment originated, the suit had to be grounded on negligence, and proof frequently was difficult. A shipper had much trouble in determining just where or when the damage occurred. The amendment required the carrier receiving goods for such transportation to issue a receipt or bill of lading therefor and to be liable "to the lawful holder thereof" for any loss or damage caused by it or by any other carrier to which such goods might be delivered or over whose lines such property might pass.

The appellant claims that the appellee issued its bill of lading to it, that it was then, and is now, the lawful holder thereof, that the Congress did not distinguish

between a "holder" who owned the goods and one who did not, or between a "holder" who had been paid for its goods and one who had not, but fixed the liability to the holder without regard to such distinctions, that the appellee is liable to it under the common law and under the statute and the bill of lading issued thereunder, and that it is the proper party to sue on the bill of lading. In support of the common law contention that the consignor is the proper plaintiff, it cites 1 *Michie* on *Carriers*, p. 490, *Dobie* on *Bailments and Carriers*, Sec. 154, p. 495, 3 *Hutchinson* on *Carriers, Secs.* 1304-1320, 2 *Williston* on *Sales*, p. 609. It further cites authority to the effect that if the property in the goods has passed, and the consignor has in fact no interest, the recovery is for the benefit of the consignee or the actual party in interest. Michie, *supra*, 5 *Elliott* on *Railroads*, p. 628. And a recovery by the consignor is a bar to a subsequent action by the owner of the goods for the same wrong. *Dobie* on *Bailments and Carriers*, p. 496.

In the majority of jurisdictions in this country, it has been held that a consignor can sue a carrier for breach of contract, irrespective of ownership of the goods shipped, because the consignor is the maker of the contract and primarily liable for the payment of the freight. Among the cases so holding (but not by any means all of them) are the following: *Blanchard v. Page*, 1857, 8 Gray, Mass., 281; *Carter v. Southern Railway Co.*, 111 Ga. 38, 36 S. E. 308, 50 L. R. A. 354; *Northern Line Packet Co. v. Shearer*, 61 Ill. 263; *Cobb, Blasdel & Co. v. Ill. Cent. R. R. Co.*, 38 Iowa 601; *St. Louis & S. F. R. R. Co. v. Stone*, 78 Kan. 505, 510, 104 P. 1067; *Southern Express Co. v. Craft*, 49 Miss. 480; *Atchison v. Chicago, R. I. & P. Ry. Co.*, 80 Mo. 213; *Grover v. Hines*, 66 Mont. 230, 213 P. 250; *Robb v. American Ry. Exp. Co.*, 78 Pa. Super. 1, appeal refused 78 Pa. Super. XXVII; *Blustein & Co. v. Am. Ry. Express Co.*, 95 W. Va. 643, 123 S. E. 566; *Hooper v. Chicago & N. W. Ry. Co.*, 27 Wis. 81.

The leading case is *Blanchard v. Page, supra.* In this case, the consignors, merchants of Boston, sued the owners of a ship to recover damage for loss on goods delivered to the ship at Boston to be carried to New Orleans. The plaintiffs did not own the goods and had no interest in their safe carriage except that arising from the bill of lading which was issued to them as shippers. They were acting in this capacity for a firm in Arkansas which had purchased and paid for the goods. The goods were shown by the evidence to belong to this Arkansas firm at the time of the shipment and at the time of the loss. The court speaking through Chief Justice Shaw discussed at length the nature of bills of lading and cited many early English cases. It concluded by adopting what it considered was the true rule laid down by Lord Ellenborough in the case of *Joseph v. Knox,* 3 Campbell 320. That case was an action by a shipper against a ship owner on a bill of lading. It was contended the action would not lie because the plaintiff was not the owner of the goods. Lord Ellenborough, however, held that the action "well lay" on the privity of contract established between the parties by means of the bill of lading, that the plaintiff was the party from whom the consideration moved, and to whom the promise was made, and that after the issuance of such a bill of lading, the ship owner could not say to the shippers that they have no interest in the goods.

The States, however, are not entirely agreed on the subject, although the majority seems to follow the above rule, laid down in Massachusetts. The appellee cites particularly the Nebraska case of *Union Pacific R. R. Co. v. Metcalf,* 50 Neb. 452, 69 N. W. 961, 963. In that case, the plaintiff shipped a carload of flaxseed from York, Nebraska, to Chicago, and it was claimed that the goods were damaged in transit. It was contended that the shipper who sued was not the owner of the goods, but that they belonged to the consignee. The court said: "This raises a question on which the authori-

ties present a most embarrassing conflict." Some of them are then reviewed, and the court reached the conclusion that all the cases holding that the consignor may sue are based on one of three grounds, first, that the consignor was the owner, or second, that the consignor was liable to the consignee or suffered special damage, or third, solely on the doctrine of privity of contract. The court said that this last doctrine "did not apply in Nebraska" because the Code required that all actions must be brought by the real party in interest. The Nebraska case relies largely on the early English case of *Dawes v. Peck*, decided in 1799 and reported in 8 Durnford and East 330. This case, however, was discussed in *Blanchard v. Page, supra*, and it was shown in that case that it had not been followed by later English cases. Other cases supporting the view taken by the Nebraska case are: *Ellington & Guy, Inc., v. Norfolk Southern R. Co.*, 170 N. C. 36, 86 S. E. 693; *Krulder v. Ellison*, 47 N. Y. 36; *Farmers' Union & Co-op. Ass'n v. Payne*, 111 Kan. 96, 205 P. 1035; *Parker Buggy Corp. v. Atlantic Coast Line R. Co.*, 152 N. C. 119, 67 S. E. 251.

We think the majority rule is the more logical. The bill of lading is the contract by means of which the goods are shipped. The consignor is the original party to this contract. It may pass if negotiable by assignment or delivery to the consignee, or to third parties, but until it so passes, it is the contract of the consignor, and the consignor alone is entitled to sue on it. If the damages received do not belong to the consignor because it has sold and received payment for the goods, or because it never owned the goods in the first place, the consignor receives the proceeds of any judgment recovered as trustee for the true owner. It may be impossible, in jurisdictions like Nebraska, to bring a suit under the privity of contract theory, but where it can be so brought, as here, we think it is the simplest method of procedure. The carrier is protected because any settlement of the judgment obtained by the consignor will be *res adjudicata* as against the real owner.

The appellee refers to the definition of holder of a bill of lading in the Uniform Bills of Lading Act, Code, Article 14, Sec. 53. The Federal Bills of Lading Act, 49 U. S. C. A., §§ 81-124, has the same definition. It would be controlling in case of a conflict. *Alderman Bros. Co. v. New York, New H. & H. R. Co.*, 102 Conn. 461, 129 A. 47. We are not, however, concerned with the definition in these acts, but we are with the definition in the amendment to the Interstate Commerce Act under which this suit is brought.

The Carmack Amendment applies the privity of contract rule to interstate shipments. The purpose of that amendment, as we have said, is to permit the person who legally holds the bill of lading to sue the initial carrier in interstate commerce who issued it, even though the damage was done by a connecting carrier. *Adams Express Co. v. Croninger*, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314. If the bill of lading is negotiable, then the suit can be brought by the person who holds it, and the same thing is true if it is non-negotiable. In the last case, of course, the legal holder will be the consignor to whom it is issued and between whom and the originating carrier there is privity of contract. There will, in such case, be no privity between the originating carrier and the consignee. The suit is to be brought in the name of the holder. What is to become of the proceeds of any judgment obtained is a matter to be determined in each case by the circumstances.

In the case of *Pennsylvania R. Co. v. Olivit Bros.*, 243 U. S. 574, 37 S. Ct. 468, 61 L. Ed. 908, certain melons were received by the defendant railroad in Delaware for transportation to Jersey City, N. J. They were transported on through bills of lading issued by the initial carrier in North Carolina, but it was stipulated that the plaintiff, who was the consignee, was, at the time of bringing the action, the lawful holder of the bills of lading. The case is not on all fours with the one before us, but the meaning of the words "lawful

holder" in the Carmack Amendment was involved. The case came to the Supreme Court on writ of error from New Jersey. *Carr v. Pennsylvania R. Co.*, 88 N. J. L. 235, 96 A. 588. The State court had decided that "any lawful holder of a bill of lading issued by the initial carrier pursuant to the Carmack Amendment * * * upon receiving property for interstate transportation, may maintain an action for * * * damage * * * to such property caused by any connecting carrier to whom the goods are delivered." The Supreme Court said that it concurred with the Court of Errors and Appeals in its construction of the Carmack Amendment. The defendant contended that the words "lawful holder" meant "the owner or someone shown to be duly authorized to act for him". The Supreme Court declined to accept this version and said: "The purpose of the amendment is special and definitely expresses the lawful holder of the bill of lading to be the person to whom the carrier shall be liable". [243 U. S. 574, 37 S. Ct. 471.]

Subsequently, in a case in the Circuit Court of Appeals for the Ninth Circuit, *Davis v. Livingston*, 13 F. 2d 605, 607, this was amplified. In that case, a carload of raisins was shipped from California to Alabama. The shipper was both the consignor and the consignee, but a bill of lading with a draft attached was sent to be delivered to Livingston, who was a broker. Livingston paid the draft, but when the raisins arrived they were found to be damaged. Suit was brought against the Presidential agent of the Texas & Pacific Ry. Co. which was the initial carrier. Contention was made that as Livingston, the broker, had sold the raisins and had been paid for them by various merchants, he had not suffered any damage while he was the owner of the bill of lading. The court rejected this view, and, after discussing the Supreme Court cases, said: "In brief, the Carmack Amendment makes the holder of the bill of lading the representative of the real parties in interest in a case such as this, where they are the persons who

have suffered 'loss, damage or injury' from the carrier's negligence."

The facts in the two last cases are not precisely in point because in each case the consignor and the consignee were the same parties. Nevertheless, the Supreme Court, and the Circuit Court of Appeals following it, both rejected the idea that ownership in the goods had to be shown in the plaintiff, and rested the right of the plaintiff to sue on its possession of and right to the bill of lading. The same view has been taken by a number of State cases arising under the Carmack Amendment. Among these are: *Foley v. American Railway Express Co.*, 69 Cal. App. 669, 232 P. 169; *Forest Green Farmers' Elevator Co. v. Davis*, 216 Mo. App. 545, 270 S. W. 394; *Amber v. Davis*, 221 Mo. App. 448, 282 S. W. 459; *Norfolk Southern R. Co. v. Norfolk Truckers' Exchange, Inc.*, 118 Va. 650, 88 S. E. 318; *Chase & Co. v. Atlantic Coast Line R. Co.*, 94 Fla. 922, 115 S. 185; *Inland Waterways Corp. v. Sloss-Sheffield Steel & Iron Co.*, 223 Ala. 397, 136 S. 849; *Aspen Fish Products Co. v. Pennsylvania-Reading Seashore Lines*, 127 N. J. L. 209, 21 A. 2d 826.

For the reasons which we have outlined, we conclude that the appellant had the right to bring suit on the bill of lading in this case, and that there was error in withdrawing the case from the jury. We do not pass upon the question of the right of the equitable plaintiff to any judgment that may be recovered because this is a matter which does not concern the appellee. If a judgment is recovered against it in this case, and it pays that judgment, it will be protected against any further suits by anyone on account of this claim. It does not matter to it, under these circumstances, whether the proceeds of such a judgment belong to the equitable plaintiff, or whether they belong to the South Carolina corporation, or what is the proper adjustment to be made between the two Newth-Morris corporations and the insurer. Neither do we pass upon any question of the sufficiency of proof of damages, or whether a claim should have been filed by the appellant against

130

the appellee before bringing suit. These are matters which can be considered in the new trial which we will order.

*Judgment reversed with costs and case remanded for a new trial.*