KEYSTONE FREIGHT LINES, Inc., v. PRATT THOMAS TRUCK LINE, Inc., et al.

No. 584 Civil.

District Court, W. D. Oklahoma.

Jan. 24, 1941.

636

J. B. Dudley and Duke Duvall, both of Oklahoma City, Okl., and Karl L. Mueller and Rawlings & Sayers, all of Fort Worth, Tex., for plaintiff.

Ned Warren, of Tulsa, Okl., for movant.

VAUGHT, District Judge.

The plaintiff in its complaint alleges that it is a corporation duly organized and existing under the laws of the State of Oklahoma, having its principal place of business at Tulsa, Oklahoma; that it is a citizen of that state; that it is now and has been for some years engaged in business as a common carrier of property by motor vehicles in interstate and foreign commerce under the Motor Carrier Act of 1935, as amended, 49 U.S.C.A. Chap. 8, § 301 et seq., and also in intrastate commerce in Oklahoma, transporting commodities generally over the highways of the states of Oklahoma, Kansas, Arkansas and Texas.

That the defendants are all corporations, individuals, or business associations engaged in business as common carriers of property by motor vehicle in interstate and foreign commerce under the Motor Carrier Act of 1935, as amended.

That in the course of the conduct of such interstate business as a common carrier, the plaintiff receives and transports shipments of property from the public generally direct from the shippers, and also receives and transports shipments initiated on the lines of other common carriers at points beyond the termini served by the plaintiff and destined to points along the routes over which plaintiff operates, which shipments it receives as a connecting or interlining carrier from such other motor carriers, the defendants herein, and receives and transports shipments originating at points along the routes which it serves destined to points beyond such routes, which it delivers to such other carriers as interlining or connecting carriers for ultimate delivery to the consignees; that in the course of the conduct of its business as such common carrier, it operates terminal facilities in Tulsa and Oklahoma City, Oklahoma, and elsewhere on its routes, and maintains and operates pickup and delivery service at such terminals.

The complaint classifies the defendants as motor carrier defendants, freight forwarding defendants, and cartage defendants, and describes particularly the functions which they perform as interstate carriers operating under said Motor Carrier Act.

The plaintiff further alleges that prior to approximately September 10, 1940, the business relations between this plaintiff and the various defendants were harmonious and that said defendants, each and all, performed their functions and duties as interstate carriers; that they received from, and delivered to, this plaintiff, freight and other commodities as provided in said Motor Carrier Act; that on or about September 20, 1940, and immediately thereafter these defendants, without notice and practically simultaneously, ceased and refused to interchange or interline any shipments whatsoever with this plaintiff; that the freight forwarding and the cartage defendants ceased and refused to deliver or receive any freight handled by the plaintiff or have any business relations with it of any nature; that the motor carrier defendants ceased and refused to deliver shipments moving over their lines and routed by the shipper over the line of the plaintiff as a connecting carrier and diverted such shipments, contrary to the shippers' directions, over the lines of other carriers; that said motor carrier defendants also ceased and refused to interchange unrouted shipments with the plaintiff for transportation over the plaintiff's line, which it normally had received as a connecting carrier until such cessation, and that said defendants have discriminated against this plaintiff; that said motor carrier defendants have refused to accept and receive shipments moving over the plaintiff's system for transportation over their respective lines as connecting carriers; that the freight forwarding defendants ceased and refused to deliver shipments to the plaintiff for transportation after the pooled car or truck load was broken up for delivery, where the shippers had routed such shipments over the plaintiff's line, and had diverted such shipments to the lines of other carriers, contrary to the shippers' directions; that said freight forwarding defendants have ceased and refused to deliver to the plaintiff the unrouted shipments which it would normally receive as one of the motor carriers among whom the freight forwarding defendants normally divided

such business; that the cartage defendants have ceased and refused to handle any freight which has moved over the plaintiff's system, or to render the service above mentioned which they had formerly been rendering prior to such cessation.

The plaintiff further alleges that the said defendants have ceased to do business and are continuing to refuse to do business with the plaintiff as aforesaid although constantly requested by the plaintiff to render the service which the defendants had formerly been rendering; that the aforesaid actions of the defendants are wholly without justification and due to no fault of this plaintiff; that all of the shipments which the plaintiff has tendered and continues to tender to them, are those covered by the joint through tariffs and of the type of commodities handled by the defendants; that all of said shipments are in strict conformity with the statutes of the United States and the rules and regulations of the Interstate Commerce Commission, and are the same type of shipments heretofore handled by the defendants up until said cessation; that the shipments moving over the defendants' lines which the plaintiff has requested and demanded be delivered to it, as had formerly been delivered prior to said cessation, are the same character of shipments delivered to other carriers rendering the same character of service as the plaintiff, and are those which the plaintiff is authorized to handle under the Motor Carrier Act under the authority of the Interstate Commerce Commission, and covered by the aforesaid joint through tariffs; that all of the above outlined business transactions between the plaintiff and the defendants, either direct or indirect, were in strict conformity with the laws of the United States, the rules and regulations of the Interstate Commerce Commission and of the various states.

The plaintiff further alleges that as a direct result of the aforesaid unauthorized acts of said defendants the plaintiff has been seriously injured, crippled and paralyzed in its business operations, and the service which it has been rendering the public, and which it is authorized to render under said Motor Carrier Act and the authority of the Interstate Commerce Commission; that a substantial portion of its business consists of the interchange

shipments with said motor carrier and freight forwarding defendants; that the unlawful acts and conduct of said defendants as herein set forth, since the aforesaid date, have caused the plaintiff to lose approximately $500 daily as revenue and the continuation of said unlawful acts and conduct will increase such daily loss of revenues; that said conduct up to date has caused the plaintiff to lose the confidence of the shipping public and its customers, and its business and business standing are rapidly being destroyed.

That the plaintiff and the motor carrier defendants at all times mentioned herein and at the present time subscribed to, published, and have on file with the Interstate Commerce Commission common joint through tariffs or freight rates which provide for through rates and service over the lines of the plaintiff and said motor carrier defendants and other carriers, and such tariffs are used by the public in shipping and routing freight, and are used by the parties hereto in the interchange or, interlining of shipments.

The plaintiff further alleges that the plaintiff has suffered, and will continue to suffer, irreparable damage and that it has no adequate remedy at law other than the relief sought by this complaint and prays for a mandatory injunction requiring said defendants to resume their former business relations with the plaintiff and for other and further relief.

It will be noted that the only relief sought in the prayer of the complaint is injunctive relief.

Upon the filing of this complaint a temporary restraining order was issued and the cause set for hearing on application for temporary injunction. This hearing was prior to the expiration of the time in which it was necessary for the defendants to plead. At the hearing, evidence was introduced in support of the complaint and at the conclusion thereof, a temporary injunction was issued on the 12th day of October, 1940, against the defendants only, and is now in force.

Thereafter, on the 26th day of November, 1940, there was filed in this case a motion to intervene by the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, Local No. 523.

In the motion for leave to intervene, the Local Union alleged that the plaintiff

was not under contract with the Local Union with respect to its employees; that all of the defendants were under contract with the Local Union, and that the contracts with the defendants contained the following clause, to-wit: "Members of the Union shall not be allowed to handle or haul freight to or from an unfair company."

The motion furthermore alleges that this Local Union has had a labor controversy with the plaintiff extending over a period of a year; that the defendants could not comply with the temporary injunction issued in this case without violating that provision in their contract, hereinabove quoted; that, therefore, the Local Union should be permitted to intervene in order that it might set up said contracts and thus show that a labor dispute was actually involved in the original action; and that the temporary injunction should be vacated and the cause dismissed for the reason that then the court would be without jurisdiction to grant an injunction under the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq.

Thereafter and on the 11th day of December, 1940, the plaintiff filed its objections to the motion for leave to intervene and alleged:

"(1) That said Local Union has not complied or attempted to comply with Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

"(2) That said motion and the proposed answer attached thereto has not been served upon the parties, as required by the Federal Rules of Civil Procedure.

"(3) That the proposed intervention of said Local Union is not in subordination to the pending suit, but is made in an effort to oust the Court of jurisdiction.

"(4) That said Local Union by its proposed intervention is attempting to inject new issues into this case, foreign to the present character of the action.

"(5) That said proposed intervention, if permitted, will operate to delay the determination of this case and will prejudice the adjudication of the rights of the original parties.

"(6) That said Local Union is not entitled to intervene as a matter of right under the Federal Rules of Civil Procedure governing intervention and under the law in such cases made and provided."

"(7) That said Local Union is not entitled to intervene as a matter of discretion under the Federal Rules of Civil Procedure governing intervention and under the law in such cases made and provided.

"(8) That said motion of intervention and proposed answer attached to and tendered therewith does not state facts sufficient to constitute a right to intervene or a defense to this action as a matter of law."

The movant in its brief contends that the action brought by the plaintiff grows out of and involves a labor dispute; that while the temporary injunction is not issued against the Local Union or the employees of the defendants, who are members of the labor union, nevertheless it is binding upon them; that the injunction cannot be obeyed by the defendants without violation of the contract between the defendants and the Local Union; that the employees of the defendants will either be compelled to obey the injunctive order of this court or go out on a strike; and that, therefore, the injunction is in effect binding upon the members of this Union.

It furthermore admits that under Rule 24(c) of Civil Procedure it has not served a copy of its motion to intervene upon the various defendants and alleges that it is not required so to do by reason of Rule 65(e) of Civil Procedure.

The various contentions of the parties may be included under three heads, to-wit:

(1) Is the movant required to serve its motion to intervene upon the various defendants under Rule 24(c), or is it exempt from such requirement under Rule 65(e)?

(2) Is the movant entitled to intervene as an absolute right under Rule 24(a), or is it entitled to intervene as a permissive right under said rule?

(3) Do the facts alleged in the proposed answer attached to the motion to intervene constitute a defense to the action alleged in the plaintiff's complaint?

Rule 24(c) provides: "A person desiring to intervene shall serve a motion to intervene upon all parties affected thereby. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

The same procedure shall be followed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in the Act of August 24, 1937, c. 754, sec. 1 [28 U.S.C.A. § 401]."

Rule 65(e) provides: "These rules do not modify the Act of October 15, 1914, c. 323, §§ 1 and 20 (38 Stat. 730), U.S.C., Title 29, §§ 52 and 53 [29 U.S.C.A. §§ 52, 53], or the Act of March 23, 1932, c. 90 (47 Stat. 70), U.S.C., Title 29, c. 6, [29 U.S.C.A. § 101 et seq.], relating to temporary restraining orders and preliminary injunctions in actions affecting employer and employee; or the provisions of Section 24 (26) of the Judicial Code as amended, U.S.C., Title 28, § 41 (26) [28 U.S.C.A. § 41(26)], relating to preliminary injunctions in actions of interpleader or in the nature of interpleader; or the Act of August 24, 1937, c. 754, § 3 [28 U.S.C.A. § 380a], relating to actions to enjoin the enforcement of acts of Congress."

Rule 65 is under the heading "Injunctions" and as to the sections of the statutes referred to in 65(e): The Act of October 15, 1914, and the Act of March 23, 1932 (Norris-LaGuardia Act) have to do with temporary restraining orders and preliminary injunctions affecting employer and employee and in no manner modify the rule of intervention as set out in Rule 24(c); Title 28, U.S.C.A. § 41(26), amending section 24(26), does not modify Rule 24(c) but deals with the original jurisdiction of bills of interpleader by insurance companies.

I, therefore, find nothing in the various statutes referred to in Rule 65(e) which would grant to the movant any such exceptional rights as are claimed in the motion for intervention. Clearly then the movant has not complied with the rule with reference to giving notice.

There are other questions raised, however, in this motion which are entitled to consideration.

■ Assuming that it is not necessary to give notice as provided in Rule 24(c), does the movant have the right to intervene under Rule 24(a), which is as follows: "Upon timely application anyone shall be permitted to intervene ·in an action: (1) When a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof." ?

It will be noted that Rule 24(a) is divided into three subsections: (1) When a statute of the United States confers an unconditional right to intervene. Clearly, this subsection is not the basis of the claim made in the ·motion for intervention. (2) When the representation of the applicant's interest is or may be inadequate and the applicant is or may be bound by a judgment in the action. The third subsection has no connection with this matter, as there is no. property in the custody of the court for distribution.

The question is whether or not the movant is entitled to intervene as an absolute right or as a permissive right under Rule 24(a). Federal Equity Rule 37, 28 U.S.C.A. following section 723, which was in force at the time of the adoption of the New Federal Rules of Civil Procedure, provided: "Anyone claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

In Mueller v. Adler, 8 Cir., 292 F. 138, certiorari denied 263 U.S. 721, 44 S.Ct. 230,.68 L.Ed. 524, the rule was announced as follows: "Under equity rule 37 * * * providing that an intervention 'shall be in subordination to, and in recognition of, the propriety of the main proceeding,' an intervention for the purpose of attacking the jurisdiction of the court in the main suit is not permissible, and a motion by an intervener to dismiss the · main bill cannot be entertained."

■ This construction of Equity Rule 37 was not carried forward into Rule 24 in definite terms, but it may be presumed that the term "intervention" was used in the new rules with the judicial construction previously given the term by our highest court.

In Chandler & Price Co. v. Brandt-jen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 9, 80 L.Ed. 39, the court said: "Introduction by intervention of issues outside those that properly may arise between the original parties complicates the suit and is liable to impose upon plaintiff a burden having no relation to the field of the litigation opened by his bill."

The clause in the contract above set out, if pleaded as a defense by the defendants, might constitute a defense but would not constitute a *labor dispute,* while if the motion for intervention should be sustained, a *labor dispute* would be injected and would constitute a new issue not disclosed by the complaint.

If a court has any discretion as to whether or not a motion for intervention should be granted and its denial of the motion, *within itself,* is an abuse of the discretion vested in the court, then the court has no discretion, and if it was intended that anyone seeking to intervene has a right which is absolute and is not discretionary with the court, the rule would have so said.

An almost identical question was presented, considered and determined in City of New York v. Consolidated Gas Company, 253 U.S. 219, 40 S.Ct. 511, 64 L.Ed. 870, and in City of New York v. New York Telephone Company, 261 U.S. 312, 43 S.Ct. 372, 67 L.Ed. 673, wherein the court held that a motion to intervene is addressed to the sound discretion of the trial court, and the refusal to grant intervention is not an abuse of discretion.

Let us examine the original complaint and see what issue is raised in the case. In the beginning of this opinion the court set out the allegations, to-wit: That the plaintiff is engaged in interstate commerce under the Motor Carrier Act; that each of the defendants is also engaged as an interstate carrier under the Motor Carrier Act; and that this plaintiff, under the rules made and provided by the Interstate Commerce Commission, delivers to and receives from said defendant carriers freight consigned to be carried by the plaintiff and certain of the defendants, as the case may be.

The question then is whether or not under this act, it is the statutory duty of these connecting carriers to deliver to and receive from the plaintiff freight, as hereinbefore stated, without regard to whether or not these defendants have the consent of the labor organizations, such as the movant, to perform the statutory duties which have been imposed upon them by Congress.

Title 49 U.S.C.A. § 302 (of the Motor Carrier Act, new) states the declaration of policy and delegation of jurisdiction to the Interstate Commerce Commission as follows: "(a) It is hereby declared to be the policy of Congress to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; improve the relations between, and coordinate transportation by and regulation of, motor carriers and other carriers; develop and preserve a highway transportation system properly adapted to the needs of the commerce of the United States and of the national defense; and cooperate with the several States and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this chapter."

This is not a new question in interstate transportation. The same rule applies to railroads and one of the early cases, Chicago, B. & Q. Ry. Co. v. Burlington, C. R. & N. Ry. Co., C.C., 34 F. 481, decided in 1888, discussed this particular question, and in the two paragraphs of the headnotes the holding of the court is clearly stated as follows:

"The duty imposed upon railroad companies in Iowa by the laws of that state and by the 'interstate commerce act' (Act Cong.Feb. 4, 1887; St. at Large 1885–87, p. 379 [49 U.S.C.A. § 1 et seq.]), of receiving from connecting roads freight and passengers, is one which the federal courts sitting in that state will enforce by mandatory injunction where the injury resulting from its non-performance is continuing; and it is no defense to such relief that a strike of locomotive engineers and firemen has been ordered on plaintiff's road, and that if defendant's road should accept cars from the 'boycotted' road its own men would be called out.

"As to defendants to a bill who have not been served with notice, and who have

not appeared, a mandatory injunction will not issue on motion, but 'if there appears to be danger of irreparable injury from delay,' within the meaning of Rev.St.U.S. § 718 [28 U.S.C.A. § 381], a restraining order, to be served upon said defendants with notice of the time and place of hearing will be granted."

In the body of the opinion, 34 F. at page 483, the court stated:

"The United States interstate commerce act provides that every common carrier shall, according to their respective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivery of property and passengers to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines, but shall not be construed as requiring any common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business.

"Now, the question is, what shall be obeyed,—the law of the land, or the order of the chiefs of the locomotive engineers? Shall a railway company refuse obedience to the express provisions of the statutory law because some of its employes threaten to quit its service, and thus stop the running of its trains? Shall the court presume that they will carry out such threats, and deny relief to the complainant upon that presumption? No temporary inconveniences to the defendant company, or the public whom it serves are, in my judgment, for one moment to be compared with the fatal consequences which must ensue from a precedent by which it would be established that a railway company may, in violation of the law of the land, refuse to receive and haul the cars of a connecting line, at the command of any irresponsible persons, or from its own belief and apprehension that its employes will leave its service, and stop the operation of its lines. Such an excuse as this is wholly inadmissible, and it must be set aside. If, in this case, the refusal of the defendant corporation to move the cars of the complainant be sustained, it will follow that, whenever in the future the locomotive engineers and firemen shall enter upon a struggle with any one road, all other corporations having connecting lines will, in violation of law, be warned not to interchange cars with the offending road, and compelled to obey the behests of their employes. Thus may the transportation of vast regions of country covered by connecting lines be controlled and paralyzed at the arbitrary will and pleasure of the Brotherhood of Locomotive Engineers. Indeed, it seems to-day to be by the grace of the leaders of this association that the various corporations owning the vast network of railways west of Chicago are permitted to operate their lines. The people of this vast region may at any moment be deprived, by the arbitrary fiat of the association in question, of all railroad facilities. Is this a power fit to be assumed and wielded by any set of irresponsible men under the sun?

"There is another matter worthy of consideration by the defendant company. If it refuses to receive and move cars laden with goods or merchandise, will the company not be liable for any damages which may accrue to the owners and consignees of such shipments? Is it not the right of the citizen and owner of goods shipped to have their property received and transported by the defendant as a common carrier, and does not this right belong to the shipper, by both the common and statute law? Suppose the goods, being perishable, should go to destruction by the way; suppose they be ordered for a special purpose, and fail to reach the consignee in time; suppose by reason of the delay caused by the act of the defendant there should be a heavy decline in the market, would not the defendant company be liable to the owner and consignee in damages?

"The injury complained of is clearly irreparable, except by the remedy now prayed for by the complainant. It is a continuing injury. It may occur every day, and many times a day. This complainant is a common carrier, and cannot refuse to receive and carry goods destined to persons living or doing business upon the defendant's line. Yet the complainant must either refuse to receive such goods, and abandon all its business connected with the defendant's line, or receive them and allow them to accumulate upon its own tracks, or in warehouses at the place of connection between the two roads."

It may be said that this is an old case and is merely another of the decisions of the Federal Courts which has long since

been superseded by other decisions resulting from modern exigencies. However, in Peoria & Pekin Union R. Co. v. United States et al., 263 U.S. 528, 534, 44 S.Ct. 194, 196, 68 L.Ed. 427, decided in 1924, in an opinion by Mr. Justice Brandeis, which opinion has not been modified, directly or by implication, the court referred with approval to Chicago, B. & Q. R. Co. v. Burlington, C. R. & N. Ry. Co., supra, and said: "Transportation Act 1920 evinces, in many provisions, the intention of Congress to place upon the Commission the administrative duty of preventing interruptions in traffic. But there is no general grant of emergency power to that end, and the detail in which the subjects of such power have been specified precludes its extension to other subjects by implication. Moreover, switching service differs in character from those as to which such power is expressly granted. These involve either the use by one carrier of property of another or the direction of the manner and the means by which the service of transportation shall be performed. The switching order here in question compels performance of the primary duty to receive and transport cars of a connecting carrier. That courts may enforce such duties by a mandatory injunction, including a preliminary restraining order, has long been recognized. It may be that Congress refrained, for this reason, from conferring emergency power of this character upon the Commission.".

What does the court mean by the "intention of Congress to place upon the Commission the administrative duty of preventing interruptions in traffic," and what does it mean by "the primary duty to receive and transport cars of a connecting carrier"?

In the case at bar, if this plaintiff cannot continue its interstate transportation under the provision of the Motor Carrier Act without the consent of the Local Union, then in effect we are admitting, as courts, that a statute of the United States is ineffective unless consent to its enforcement is granted by local labor unions.

█ The Norris-LaGuardia Act is a long step from the rules theretofore existing, and it is clear that the sole purpose of this Act is to prevent injunctive relief against labor unions or employees who are members of a labor union. It is apparent from reading the Norris-LaGuardia Act that Congress did not omit anything that might be a protection to labor unions, and we are not criticizing the Act, but certainly it was not contemplated by Congress, nor even by the labor unions themselves, that courts would extend and enlarge the powers granted to labor unions to such an extent that it would give such unions the right to interfere boldly and by written contract with the enforcement of the laws of the United States.

█ The movant contends in its attached answer that if permitted to intervene it will assert that it has a contract with the defendant carriers by which they are not permitted to handle any freight from connecting carriers which they deem unfair. Can the Local Union, by an arbitrary decree that plaintiff is unfair, prevent plaintiff from continuing its operations in interstate commerce, although plaintiff has complied with the rules and regulations of the Interstate Commerce Commission, and is acting under the authority of the Commission and the Motor Carrier Act?

This question is not raised in the plaintiff's complaint but it is given as a reason, by the movant's proposed answer, why the defendants cannot deliver to and receive freight from the plaintiff, that under their contract with the Local Union, if the defendants did deliver to and receive freight from the plaintiff, their own employees will strike.

If it is admitted that a mandate of the Local Union is a substitute for a federal statute which must be recognized and enforced by the courts, then this intervention should be granted.

But, says the movant in its pleadings and in its brief, the failure on the part of the plaintiff to enter into a contract with the Local Union constitutes a labor dispute, and if it is permitted to intervene then there is a labor dispute in the main case, and it would be the duty of the court to vacate the injunction heretofore granted and dismiss the case for want of jurisdiction.

Is it an abuse of a court's discretion to refuse to permit an intervention which would inject entirely new issues which would call for the vacation of a judgment already entered, and which would challenge the jurisdiction of the court in the original proceedings?

In Chandler & Price Co. v. Brandtjen & Kluge, Inc., supra, the court recognized the better practice of requiring that the proposed answer should accompany the application for leave to intervene, and this "better practice" was carried forward into the new Rules of Civil Procédure.

A court passing upon a motion to intervene, therefore, not only has the right, but it is its duty, to examine the proposed answer to determine whether or not the answer contains facts which would make the movant a necessary party, and in the last above mentioned case, the court held that a manufacturer of an alleged infringing device, who had undertaken to indemnify its customers against liability for infringement, is not entitled as a matter of equitable right to intervene in a patent infringement suit against the customer, but that it might be permitted to intervene in the discretion of the court. The court said, with reference to the legal limitations controlling a proposed intervenor: "The intervenor was not entitled to come into the suit for the purpose of having adjudicated a controversy solely between it and plaintiff. Issues tendered by or arising out of plaintiff's bill may not by the intervener be so enlarged. It is limited to the field of litigation open to the original parties."

In United States v. California Cooperative Canneries, 279 U.S. 553, 49 S.Ct. 423, 424, 73 L.Ed. 838, in an opinion by Mr. Justice Brandeis, the court said: "Nor did it refer to the *settled rule* of *practice* that intervention will not be allowed for the purpose of impeaching a decree already made." (Emphasis supplied.)

In Missouri Pacific R. Co. v. Larabee Flour Mills Co., 211 U.S. 612, 29 S.Ct. 214, 216, 53 L.Ed. 352, the Supreme Court, in an opinion by Mr. Justice Brewer, said: "While no one can be compelled to engage in the business of a common carrier, yet, when he does so, certain duties are imposed which can be enforced by mandamus or other suitable remedy. * * * Whenever one engages in that business, the obligation of equal service to all arises; and that obligation, irrespective of legislative action or special mandate, can be enforced by the courts."

District Courts recently have passed upon the same question. In Lubbock-El Paso Motor Freight, Inc., v. Southwestern Freight Lines, Ltd., D.C.W.D.Tex., opinion by Judge Boynton;[1] in Hill Lines, Inc., v. Rio Grande Truck Lines, D.C.N. M.[1]; and in Sunset Motor Lines, Inc., v. Southwestern Freight Lines, Ltd., D.C. Ariz.,[1] it was held that this provision of the contract with the labor union on the part of the defendants did not constitute a defense, and an injunction was issued in each case.

In Southeastern Motor Lines, Inc., v. Hoover Truck Co., Inc., D.C.M.D.Tenn., 34 F.Supp. 390, the Local Union was permitted to intervene, and thereafter it was held that the issues presented in the intervention constituted a labor dispute and that the provision of the Norris-LaGuardia Act applied.

In Colorado-Wyoming Express et al. v. Denver Local Union, etc., D.C.Colo., 35 F. Supp. 155, and in Milk Wagon Drivers' Union, etc., v. Lake Valley Farm Products, Inc., et al., 61 S.Ct. 122, 85 L.Ed. ——, decided November 18, 1940, an injunction was denied, and properly so, for the reason that the Local Union was a party to the original action and injunctive relief was sought directly against the union or its members.

As stated hereinbefore, the plaintiff and the motor carrier defendants have fully complied with the law and with the regulations of the Interstate Commerce Commission. They have been for a long time interlining and exchanging freight with each other at certain points in Oklahoma and elsewhere, their joint rates were approved by the Interstate Commerce Commission and, as common carriers, they were under obligation to carry, transport, exchange and interline freight in interstate commerce without delay or interruption.

The only question involved in the original action was whether the obligation imposed by the statute could be ignored. If this contract would not constitute a defense in the original action, then the Local Union should not be permitted to intervene. If permitted to so intervene, it would call for the vacation of an existing judgment in the original action and dismissal of the action for want of jurisdiction.

This court, therefore, has reached the following conclusions:

---

[1] No opinion for publication.

1. That intervention should be denied because the movant has not complied with Rule 24(c);

2. That the movant is not entitled to intervene either as an absolute right under Rule 24(a) or as a permissive right under the same section; and

3. That the allegations of the answer attached to the motion of the movant are not sufficient to constitute a defense on the part of the defendants in the original action.

It is the purpose of this court in this opinion to pass upon but one question—the right of the movant to intervene—and while other questions have been discussed, which necessarily refer to the probable answers filed by the defendants in this case, yet, since the defendants are not parties to this motion to intervene, not having even been notified in accordance with the rule, this opinion is not intended to determine any issues between the plaintiff and the defendants, nor to prejudice the defendants by any inferences that may be drawn from the opinion.

The motion to intervene is denied. An exception is allowed.