GULF, MOBILE AND OHIO RAILROAD COMPANY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 24442.

United States Court of Appeals Fifth Circuit.

March 15, 1968.

Gerard M. Dillon, New Orleans, La., Curtis, Foster & Dillon, New Orleans, La., for appellant.

Ernest M. Morial, Kathleen Ruddell, Asst. U. S. Attys., New Orleans, La., Louis C. LaCour, U. S. Atty., New Orleans, La., for appellee.

Before RIVES and GODBOLD, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge:

The United States of America brought this suit below on behalf of its agency, Commodity Credit Corporation against Gulf, Mobile and Ohio Railroad Company and Wade Tung Oil Company for damages for the loss of 59,780 pounds of tung oil from a tank car furnished by the government, but in the possession of the railroad at the time the loss occurred.

The railroad's defense was that the loss was caused solely as a result of a latent defect in the tank car which was not discoverable by means of a reasonable inspection. The District Court found for the government against the railroad, assessed damages of $12,942.37, and dismissed the claim against Wade Tung Oil Company. The government did not appeal the dismissal of Wade, but the railroad has brought this appeal from the judgment, specifying errors in the findings of the District Court sitting without a jury.

On October 24, 1960, Commodity Credit and Wade entered into an agreement whereby Wade was to store tung oil for Commodity Credit and to deliver it f. o. b. tank car at designated shipping points. Pursuant to that agreement, Wade, on December 17, 1960, at its plant in Bogalusa, Louisiana, loaded 79,180 pounds of tung oil into car No. CHAX 135, owned by a California corporation and leased by it to Commodity Credit.

Immediately prior to the loading, a foreman at Wade's plant inspected the

interior of the tank car and found no visible defects. After it was loaded he again inspected the exterior of the car and found no defect or leakage.

The loaded car was delivered to and accepted by the railroad on the same day, at which time it issued its bill of lading. It was picked up by the railroad at Wade's plant between 4:00 and 4:30 o'clock that afternoon and transported to the railroad's South Yard in Bogalusa, approximately one and one-half miles away, and subsequently moved into and out of the team track and then onto the railroad's main line in the South Yard. There the exterior of the car was inspected by a car inspector for the railroad and no damage or leakage found. About 7:00 P.M. tank car No. CHAX 135, together with another tank car and a box car, was moved from the main line to the scale track in the yard where it was weighed.

About 10:45 P.M. that same evening the tank car was moved back onto the main line, into and out of the repair track, and finally onto Track No. 6 where it was coupled to another car. It was during the course of this movement that a fracture of the metal approximately three feet in length occurred along the riveted longitudinal seam which caused the loss of oil. The leak was quickly discovered after which the car was returned to Wade's plant where the remaining oil was pumped into another car. The value of the 59,780 pounds of oil lost was $12,942.37.

The statute applicable to this case is 49 U.S.C. sec. 20(11), which provides in part: "Any common carrier * * * receiving property for transportation * * * shall be liable * * * for any loss * * * to such property caused by it * * *."

In Missouri Pacific Railroad Company v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964), the Supreme Court in discussing the effect of this statute declared:

"the statute codifies the common-law rule that a carrier though not an absolute insurer, is liable for damages to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or the nature of the goods. Bills of Lading, 52 I.C.C. 671, 679; Chesapeake & O. Ry. Co. v. A. F. Thompson Mfg. Co., 270 U.S. 416, 421–423, [46 S.Ct. 318, 70 L.Ed. 659;] Adams Express Co. v. Croninger, 226 U.S. 491, 509, [33 S.Ct. 148, 57 L.Ed. 314;] Hall & Long v. Railroad Companies, 13 Wall. 367, 372, [20 L.Ed. 594]. Accordingly, under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of the damages. Thereupon, the burden of proof is upon the carrier to show both its freedom from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability."

■ Thus in this case when the United States showed delivery of the tung oil to the railroad in good condition, the subsequent damage and loss in transit, and the amount of damages occasioned thereby it established a prima facie case. It then became the railroad's burden to show that it was free from negligence and that the damage was due to an excepted cause. Appellant's specifications of error challenge the District Court's findings that it failed to overcome that burden.

Specifically, it contends with respect to the question of the railroad's negligence that the trial court erred in failing to find there was no negligent handling of the tank car by the railroad.

■ The evidence reveals that the fracture in the tank car occurred between 10:45 and 10:55 P.M. on December 17, 1960. Earlier the same day between 4:00 and 4:30 P.M. the car had been picked up at the Wade Tung

Oil Plant by the railroad and switched from the Plant to the South Yard of G M & O Railroad. Later the loaded tank car together with another tank car and a box car was moved from the main line to the scale track and weighed. After weighing it was moved by the switch crew from the scale yard onto the main line, then into and out of the repair track and finally "kicked" onto Track 6 in the South Yard. Almost immediately after this last switching, the leakage of oil was discovered. Although there is no direct testimony of an accident or of particularly rough handling of the loaded tank car, the railroad switchmen admitted it was possible that the split in the side of the car could have been caused from the jolting effect of coupling when the car was "kicked" down the track and coupled to another car on Track 6. It is our opinion that the damage having occurred while the car was in the possession of the railroad, and the railroad having admitted that the jolting effect from the "kicking" could have caused the damage there was no error in the trial judge's finding that the railroad had "failed to show by a preponderance of convincing proof, as its legal burden required it to do, that it did not negligently cause the fracture which resulted in the loss of the oil."

The railroad's main defense was that the tank car containing the tung oil was in a defective condition at the time it was delivered to the railroad by the shipper. Its chief witness to prove this contention was C. D. Brown, employed by the railroad as a mechanical engineer and offered by Appellant as an expert in the field. Although he had not completed the requirements for a degree, Brown had over ten years experience with the railroad as a mechanical engineer and had satisfied the requirements for membership in the American Society of Mechanical Engineers. Appellee objected to his being offered as an expert, but the trial judge overruled the objection, noting his status went to the weight to be given his testimony rather than to its admissibility.

Brown testified that he inspected the car on December 28, 1960, eleven days after the damage occurred. He stated that he found a three-foot-long jagged horizontal break through the 3/8 inch thickness of the metal, which he classified as spontaneous. He said that the break consisted of a shiny hairline about 1/16 of an inch thick towards the inside diameter of the sheet, the balance of the break being brown and discolored. It was his opinion that the shiny edge represented a very recent break, as contrasted to an earlier break represented by the darker portion of the broken edge. He pointed out that if such a break already existed as a defect in the car that it would have been undetectable on usual inspection, since the older part of the break would have been concealed by the overlapping portions of the components of the car. It was his opinion that the final failure of the metal was caused by its deterioration; that the metal already had a fracture in it, but it was not final or complete until the last minute.

It is Appellant's contention that the trial judge erroneously deemed the factual part of Brown's testimony to be opinion evidence and then failed to consider it because he found his qualifications insufficient. A fair reading, however, reveals that while the court did not credit Brown's conclusion as to what had produced the condition recounted by the witness, it did not dispute the condition itself. The judge noted all of the testimony and chose to reject that portion relative to the nature of the defect as opinion not supported by the witness' qualifications. In effect, the court concluded that the government's causal hypotheses were as compatible with the condition of the metal as those advanced by Appellant's employee.

In discussing expert testimony (experiential opinion) Wigmore states that the

"question in each instance is whether the particular witness is fitted to the matter at hand." II Wigmore, Evidence Sec. 556. That authority goes on to say that "the trial court must be left to determine absolutely and without review the fact of possession of the required qualification by a particular witness." II Wigmore Sec. 561.

■ Obviously the trial court attached but little credibility to Brown's conclusion and accordingly refused to give his opinion any weight. Its finding in this regard may be overturned on appeal only to correct an abuse of discretion, and the record does not disclose that an abuse of discretion occurred.

■ In reviewing the trial court's ultimate findings that the railroad had not sustained its burden of proving that (1) it was free from negligence and (2) the loss was caused by a defect in the tank car existing prior to its being delivered to the railroad this court is bound by the "clearly erroneous" rule. This rule (Rule 52(a) F.R.Civ.P.) provides, in part: "* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■ This is not a case where the ultimate finding of the court was the result of legal reasoning from the evidentiary facts, as contended by appellant. See Bullock v. Tamiami Trail Tours, Inc., 266 F.2d 326 (5th Cir. 1959). The findings of the trial court were derived from the exercise of its discretion to determine the credibility and weight to be accorded the evidence probative of the questions. We cannot say that those findings were clearly erroneous.

The Government having proved a prima facie case and the railroad having failed to sustain its burden of proving that the loss of tung oil was due to one of the excepted causes or that it was free of negligence, the judgment is affirmed.