AUTOMATED DONUT SYSTEMS, INC. *vs.* CONSOLIDATED RAIL CORPORATION.

Suffolk. April 9, 1981. — August 7, 1981.

Present: HALE, C.J., GRANT, & DREBEN, JJ.

*Carrier*, Burden of proof, Damages. *Practice, Civil*, Parties, Burden of proof, Instructions to jury. *Damages*, Carrier.

Under 49 U.S.C. § 20 (11) (1976), the consignor of equipment which was delivered to its consignee in damaged condition was entitled to bring an action against the carrier even though it did not hold title to the equipment. [327-330]

In an action by the consignor of equipment which was delivered to its consignee in damaged condition, the burden of proving improper packing by the consignor was properly placed on the carrier even though the bill of lading bore a notation indicating "shipper's load and count" where the notation had been placed on the bill by the driver of the trucking firm which had hauled the trailer to the carrier in circumstances not binding on the plaintiff and where there was evidence that the carrier had undertaken to inspect the shipment prior to sealing the container. [330-333]

The consignor of equipment which was delivered to its consignee in damaged condition was entitled to recover from the carrier damages for both itself and the consignee. [333-334]

The consignor of equipment which was delivered to its consignee in damaged condition was entitled to recover from the carrier both for the difference in value of the property before and after loss and for expenses incurred in reasonable, although unsuccessful, attempts to repair the equipment [334-335]; in addition, the consignor was entitled to recover its reasonable costs of inspection to determine whether to repair, to determine what parts were needed, and to determine the causes of ongoing problems [335-336].

CIVIL ACTION commenced in the Superior Court Department on December 29, 1978.

The case was tried before *Linscott*, J.

*Alan R. Hoffman* for the defendant.

*David W. Walsh* (*Richard J. Ferriter* with him) for the plaintiff.

DREBEN, J. On July 7, 1978, the plaintiff, Automated Donut Systems, Inc. (Donut), shipped a trailer containing doughnut making equipment from Massachusetts to its customer in Indiana via the defendant carrier, Consolidated Rail Corporation (Conrail). The machinery arrived in Indiana in damaged condition, and the plaintiff brought suit against Conrail under 49 U.S.C. § 20(11) (1976), the so called Carmack Amendment.[1] After trial to a jury which awarded separate damages of $95,000 to the consignee (customer) and $25,000 to the plaintiff under instructions from the judge that any award to the consignee would be held by the plaintiff for the former's benefit, judgment of $120,000 was entered for the plaintiff. The defendant appeals urging, among other things: (1) that the plaintiff is not entitled to maintain the action as it did not have title to, or a beneficial interest in, the equipment; (2) that the judge erred in placing on the carrier the burden of proving improper loading by Donut; (3) that the plaintiff was not entitled to recover the damages sustained by its customer and that, in any event, the damages were excessive. Although we reject Conrail's main contentions, we remand the case to the Superior Court for further proceedings consistent with this opinion because a small portion of the damages awarded were without basis.

The facts relevant to each of Conrail's claims will be set forth as required.

1. *Plaintiff's right to bring suit.* Conrail was both the receiving and the delivering carrier. In such event, the Carmack Amendment, as in effect at the time of the delivery of the equipment,[2] provided for liability to the "lawful holder"

---

[1] Effective October 17, 1978, the statute was recodified by Pub. L. No. 95-473, 92 Stat. 1337, 1453-1454 (1978), and the relevant portion now appears in 49 U.S.C. § 11707 (Supp. II 1978).

[2] The 1978 recodification, 49 U.S.C. § 11707 (Supp. II 1978), provides for carrier liability "to the person entitled to recover under the receipt or bill of lading." Section 3 of the recodification act (Pub. L. No. 95-473, 92 Stat. 1466 [1978]) states that this section "may not be construed as making a substantive change in the laws replaced."

of the receipt or bill of lading issued by the initial carrier or to "any party entitled to recover thereon."

Conrail claims that Donut was not a "lawful holder", as it was neither the owner of the machinery nor a person with a beneficial interest in the property. Moreover, Donut did not have physical possession of the bill of lading.[3] Conrail argues that only Donut's customer in Indiana, who held title to the machinery and who had paid Donut in full, was a proper plaintiff. We reject this conclusion.

Although the consignee as owner of the property could have brought an action against Conrail, it did not do so. Instead, it sued Donut, and at the time of trial the action against Donut was pending in Indiana. While there is some authority that a shipper who does not have title may not bring suit,[4] we consider more consonant with Massachusetts law the view, supported by the weight of authority[5] and

---

[3] The plaintiff did not have possession of the bill of lading at the commencement of the action. Its location was only discovered near the end of trial, when it was introduced as an exhibit. The bill of lading had been in the physical possession of M & S Express, the trucker paid by Donut to haul the trailer from its factory to Conrail's terminal. Although the plaintiff argues that possession by the trucking agent should be imputed to the plaintiff and thus make it a "lawful holder," we do not rest our decision on this basis. Possession alone is not a crucial factor. See *Bowden* v. *Philadelphia, B. & W. R.R.*, 28 Del. 146, 149 (1914). See also note 2, *supra*. The recodification, which is to have no substantive effect, no longer uses the term "holder".

[4] See, e.g., *Dearborn Stove Co. v. Dean*, 40 Ala. App. 459, 463 (1958), rev'd on other grounds, 269 Ala. 561 (1959); *Bruner* v. *Chicago & E.I. Ry.*, 87 Ind. App. 374, 378 (1928); *Ellington & Guy, Inc. v. Norfolk S. R.R.*, 170 N.C. 36, 37 (1915). See also *East Tex. Motor Freight Lines* v. *W.H. Hutchinson & Son*, 241 S.W. 2d 759, 764 (Tex. Ct. App. 1949) (shipper not possessing bill of lading has burden of proof to show that its "interest in the contract of affreightment" has not been transferred).

*Strawberry & Vegetable Auction, Inc.* v. *Railway Exp. Agency, Inc.*, 143 So. 665 (La. Ct. App. 1932), relied on by Conrail, is distinguishable, as the consignee in that case had diverted the goods from their original destination.

[5] See, e.g., *Ninth St. East, Ltd. v. Harrison*, 6 Conn. Cir. Ct. 597, 602 (1968); *Newth-Morris Box Corp.* v. *Pennsylvania R.R.*, 197 Md. 119, 127 (1950); *Grover* v. *Hines*, 66 Mont. 230, 234 (1923); *Robb* v. *American Ry. Exp. Co.*, 78 Pa. Super. Ct. 1, 6 (1921); *Rogers Walla Walla, Inc.* v.

adopted by the trial judge, which permits a shipper by reason of its interest in the contract of shipment to bring an action against the carrier whether or not it has title.

Long before the Carmack Amendment, the shipper's interest in its contract of carriage was recognized in Massachusetts. *Blanchard* v. *Page*, 8 Gray 281, 298-299, 301 (1857). *Finn* v. *Western R.R.*, 112 Mass. 524, 533-534 (1874). In *Finn*, a shipper was held entitled to sue on his contract with the carrier whatever "the legal effect of the negotiations between consignor and consignee upon the title to the property." *Id.* at 533. The shipper had "his own interest" in the safe carriage of the goods. We think the same reasoning is applicable under the Carmack Amendment. See, e.g., *Newth-Morris Box Corp.* v. *Pennsylvania R.R.*, 197 Md. 119, 127 (1950) (Carmack Amendment applies the privity of contract rule to interstate shipments); *Robb* v. *American Ry. Exp. Co.*, 78 Pa. Super. Ct. 1, 6-7 (1921); *Rogers Walla Walla, Inc.* v. *Willis Shaw Frozen Exp., Inc.*, 23 Wash. App. 540, 543-544 (1979).

Moreover, here, the plaintiff is being sued by its customer and has, therefore, a direct interest in a recovery. Had it settled that suit, in the absence of any reservation of rights, it would be the only one entitled to recover against Conrail. *Aspen Fish Prod. Co.* v. *Pennsylvania-Reading Seashore Lines*, 127 N.J.L. 209, 210 (1941). See also *Produce Trading Co.* v. *Norfolk S.R.R.*, 178 N.C. 175, 181 (1919) (consignor's reduction of price to consignee amounts to an equitable assignment to consignor of consignee's right to recover).

---

*Willis Shaw Frozen Exp., Inc.*, 23 Wash. App. 540, 543-544 (1979); *L. Blustein & Co.* v. *American Ry. Exp. Co.*, 95 W.Va. 643, 645 (1924). See generally Bugan, When Does Title Pass From Shipper to Consignee and Who Has Risk of Loss or Damage in Transportation; Ch. XXII, Who Has the Remedy or Right of Action Against the Carrier for Loss or Damage in Transit, especially 376 (2d ed. 1951); Sorkin, How to Recover for Loss or Damage to Goods in Transit § 2.25[4] (1981); 13 C.J.S., Carriers § 249(c)(1) (1939). See also *Pennsylvania R.R.* v. *Olivit Bros.*, 243 U.S. 574, 581, 583 (1917) (ownership not required where stipulated that plaintiff was lawful holder of bill of lading); *Valco Mfg. Co.* v. *C. Rickard & Sons*, 22 N.J. Super 578, 586 (1952).

The plaintiff's potential liability, although uncertain, is a direct interest. We see no reason to require Donut to await the outcome of the consignee's suit and risk the running of the statute of limitations as a condition of maintaining the present action.

We hold, therefore, that Donut may, as matter of law, pursue this action. See generally Uniform Commercial Code, G. L. c. 106, § 2-722; Mass.R.Civ.P. 17(a), 365 Mass. 763 (1974); Nolan, Civil Practice §§ 142 & 143 (1975).

2. *Burden of proof as to improper packing.* Conrail claimed that the damage was due to the plaintiff's improper packing of the equipment. One of the most hotly contested issues at trial was whether the machinery had been properly braced in the trailer before it was placed on Conrail's flat (piggy back) car. The judge charged the jury that Conrail had the burden of proof on this issue. Conrail claims that this was error, citing 49 U.S.C. § 101 (1976),[6] because Donut had loaded the trailer and because the bill of lading bore the notation "S L & C", a shorthand expression for the term "shipper's load and count". Conrail argues that the notation has the effect of placing the burden of showing proper packaging on the shipper. See *Dublin Co.* v. *Ryder Truck Lines, Inc.*, 417 F.2d 777, 778 (5th Cir. 1969); *Modern Tool Corp.* v. *Pennsylvania R.R.*, 100 F.Supp. 595, 596, 597 (D. N.J. 1951).

Conrail's reliance on these cases is misplaced. The evidence does not warrant a finding that the notation "S L & C" on the bill of lading was placed there in circumstances binding on the shipper. The exhibits and undisputed testimony

---

[6] Title 49 U.S.C. § 101 (1976) in relevant part, provides:

"The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading."

established that the plaintiff had prepared a bill of lading which in typing described the shipment and listed the consignor and the consignee. The typed portion of the bill contained no reference to "shipper's load and count." It was also undisputed that the notation in handwriting was inserted by the driver of M & S Express, the trucking firm which had hauled the trailer to Conrail. The driver had inserted "S L & C" underneath the signature he had placed on the bill on behalf of M & S, and adjacent to his insertion of the date. The president of M & S Express explained that if the shipper loaded the trailer and the count were later disputed, "there's no way my driver could tell, so he put 'S L & C'. It's a common occurrence."

Whatever may have been the effect of the notation as between the plaintiff and the trucker, the notation by the driver did not constitute a part of the contract between Conrail and the plaintiff. It was obvious from the bill of lading who had made the notation and, in fact, a representative from Conrail testified that the driver (and not the plaintiff) had inserted the notation. There was no evidence or claim made at trial that the driver had authority to change the bill of lading on behalf of the plaintiff. A representative of Conrail explained that the normal procedure is for the shipper to prepare the three-part bill of lading and that the railroad does not change the bill without permission of the shipper. In these circumstances the judge was correct in not referring to "shipper's load and count" in his instructions.

Nor did the evidence entitle Conrail to assert that the shipper took the full responsibility for loading, thereby relieving Conrail of any duties of inspection, and placing the burden of proof as to proper packing on the shipper. At trial, the plaintiff asserted that Conrail had agreed to inspect the shipment. Although Conrail denied such an agreement, its representative acknowledged that the report of the inspection made at the time of delivery of the loaded trailer to Conrail bore a notation to the effect that there was no visible damage to the top or floor of the trailer. His testi-

mony may be interpreted to mean that Conrail's inspector had looked into the trailer before he had placed the seal on the trailer. There was also testimony of a practice of inspection by the railroad.[7]

Thus, Conrail cannot benefit from cases which relieve the carrier of a duty of inspection because of a sealed container or otherwise, and which, as a result, place the burden of showing proper loading on a shipper.[8] See, e.g., *Armour Research Foundation of Ill. Inst. of Technology* v. *Chicago, R.I. & P. R.R.*, 311 F.2d 493, 494 (7th Cir.), cert. denied, 372 U.S. 966 (1963); *Minneapolis S.P. & S.S.M.R.R.* v. *Metal-Matic, Inc.*, 323 F.2d 903, 905 (8th Cir. 1963); *Blue Bird Food Prod. Co.* v. *Baltimore & O. R.R.*, 492 F.2d 1329, 1332, 1333 (3d Cir. 1974).

The Carmack Amendment codified the common law rule that a carrier, though not an absolute insurer, is liable for damages to goods transported by it unless it can show that the damage was due to an excepted cause, such as the act of the shipper. The "burden of proof is on the carrier to show . . . that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Missouri P. R.R.* v. *Elmore & Stahl*, 377 U.S. 134, 137-138 (1964). We

---

[7] Our holding that the "shipper's load and count" was not a term of the contract of shipment disposes of Conrail's objection, based on the parol evidence rule, to the introduction of evidence of an agreement as well as a practice by Conrail to inspect. Its objection to the evidence of practice, on the basis of an insufficient familiarity of the witness with the practice, was ill-founded. The judge questioned the witness and, after such questioning, allowed him to testify as to his own observation over the years. The judge had broad discretion on that question, and there was no abuse of discretion.

[8] We note that, even where there is a notation "shipper's load and count", the railroad is not relieved from liability if the improper packing is discoverable on ordinary observation of the carrier's agent. See generally Miller's Law of Freight Loss and Damage Claims 99-117 (4th ed. 1974), and cases cited. However, because we hold that the judge's charge on the burden of proof was proper, and because the jury, in answer to a special question, found that the damage was not caused by the plaintiff's faulty packing, we do not consider any question relating to Conrail's duty to inspect except as it concerns the burden of proof.

see no reason why that rule was not applicable here. We hold that the judge was correct in placing on Conrail the burden of showing improper packing. *Masonite Corp.* v. *Norfolk & W. Ry.*, 601 F.2d 724, 728 (4th Cir. 1979). See *Gulf M. & O.R.R.* v. *United States*, 391 F.2d 545, 549 (5th Cir. 1968). See generally Miller's Law of Freight Loss and Damage Claims 94-99.

3. *Damages.* The defendant claims error in the judge's instructions which allowed the plaintiff to recover its own damages as well as those of the consignee. The defendant also urges that the amount awarded was excessive in a number of respects.

a. There was no error in allowing the plaintiff to recover the damages for both itself and the consignee. As we held in part 1, each had a sufficient interest in the safe transportation of the property to bring an action. In such circumstances, where only one of the parties has brought suit against the carrier, the courts, on a variety of grounds, have permitted the recovery of the full amount of damages by the shipper or by the consignee or commission agent, as the case may be.[9] This was true at common law. See e.g., *Finn* v. *Western R.R.*, 112 Mass. at 534. See also *Blanchard* v. *Page*, 8 Gray at 301; *Edgerton* v. *Chicago, R.I. & P. Ry.*, 240 Ill. 311, 316 (1909); *Boston & Me. R.R.* v. *Warrior Mower Co.*, 76 Me. 251, 259-260 (1804). It is also the case under the Carmack Amendment. See, e.g., *Thompson* v. *H. Rouw Co.*, 237 S.W.2d 662, 666 (Tex. Ct. App. 1951); *Texas & N.O.R.R.* v. *H. Rouw Co.*, 271 S.W.2d 666, 671-672 (Tex. Ct. App. 1954) ("statute intends for the plaintiff against a carrier to recover for himself as well as for others"); *Collins* v. *Denver & R.G. Ry.*, 181 Mo. App. 213, 215 (1914). See also *Nashville, C. & S.L. Ry.* v. *Southern Nursery Co.*, 3 Tenn. App. 148, 151 (1926) (dealing with the related question of claim preclusion). The same rule is applicable in cognate cases under the Uniform Commercial

---

[9] The recovering plaintiff must, in such cases, account as a fiduciary to the other party having an interest.

Code, G. L. c. 106, § 2-722. See *Ninth St. East, Ltd.* v. *Harrison*, 5 Conn. Cir. Ct. 597, 602 (1968).

b. Contrary to the defendant's contention, the rule did not permit a double recovery here. The damages recovered would have been proper had the plaintiff been the owner of the property and the sole person entitled to sue. There was evidence that Donut attempted to make the equipment function and as a result incurred expenses exceeding $22,000. Despite Donut's endeavors, the machine never became operable. The defendant claims that repairs are an alternative form of recovery and that recovery may not be had both for repairs and the difference between the value of the property before and after the harm.

When there is a partial loss and the plaintiff successfully repairs the property, recovery may not be had both for repairs and the difference in value of the property. Such recovery would be duplicative. Similarly, if a plaintiff chooses to repair goods at a cost in excess of the market value of the property, in the usual case, he can only recover the market value, as it normally is not reasonable to repair in such circumstances, thereby enhancing the damages against the carrier. Restatement (Second) of Contracts § 348(2) (b) & Comment c (1981). *O'Brien Bros.* v. *The Helen B. Moran*, 160 F.2d 502, 505-506 (2d Cir. 1947). *The Empress Eugenie*, 167 Eng. Rep. 66, 67 (1860). See also Restatement (Second) of Torts § 928(a) & Comment a (1979).

However, in cases where such repair efforts are reasonable at the time made, and it is only through hindsight that it becomes evident that the efforts were unsuccessful and enhanced the cost, there is no rule barring recovery for both attempted repairs and the difference in value of the property before and after loss. Permitting recovery for such attempts "reflects the policy . . . of encouraging the injured party to make reasonable efforts to avoid loss by protecting him even when his efforts fail . . . ." Restatement (Second) of Contracts § 350(2) & Comment h (1981). Thus the rule of the Restatement (Second) is that "costs incurred in a reasonable but unsuccessful effort to avoid loss are recovera-

ble." *Id.* See also § 347, Comment c; McCormick, Damages § 42 (1935); 11 Williston, Contracts § 1354 (3d ed. 1968); *Santiago* v. *Sea-Land Serv., Inc.*, 366 F. Supp. 1309, 1317 (D.P.R. 1973). See also Restatement (Second) of Torts §§ 919, Comment c & 928(a), Comment a (1979); *Ellerman Lines, Ltd.* v. *The President Harding*, 288 F.2d 288, 290 (2d Cir. 1961); *Berwind Corp.* v. *Litton Indus., Inc.*, 532 F.2d 1, 8-9 (7th Cir. 1976); *Mecom* v. *Levingston Shipbuilding Co.*, 622 F.2d 1209, 1213-1214 (5th Cir. 1980).

The plaintiff, having the burden of proof, must of course show that the expenses incurred were reasonable. However, in this case the defendant conceded (with good reason) that "there is no issue concerning whether the effort was reasonable or not as far as the defendant is concerned." As a result, the judge, without objection, instructed the jury that the plaintiff's attempts to fix the machine were reasonable. In these circumstances, we conclude that there was no duplication of damages or other error in allowing recovery for the attempted repairs. The Carmack Amendment does not require a different result. The statute[10] has been construed broadly by the United States Supreme Court and does not limit the common law rule of damages. See *New York, P. & N.R.R.* v. *Peninsula Produce Exch.*, 240 U.S. 34, 38 (1916) (damages are not limited to damage to the property and "embrace all damages resulting from any failure to discharge a carrier's duty"); *Chicago, M. & S.P. Ry.* v. *McCaull-Dinsmore Co.*, 253 U.S. 97, 99-100 (1920) (statute requires recovery of full actual loss); *Illinois Cent. R.R.* v. *Crail*, 281 U.S. 57, 64 (1930) (no rigid rule; market value at best a convenient means of getting at the loss suffered).

c. We reject the defendant's claim that the plaintiff cannot recover its cost of inspection to determine whether to repair, to determine what parts were needed, and to deter-

---

[10]The 1978 recodification, 49 U.S. § 11707 (Supp. II 1978) (see note 1, *supra*), slightly changed the wording of the damage clause. The House Report indicates the inclusive nature of the clause. H.R. Rep. No. 1395, 95th Cong., 2d Sess. 196, reprinted in [1978] U.S. Code Cong. & Ad. News 3205.

mine the causes of ongoing problems. There is no reason to deny these costs, provided they were reasonable. While there are some old cases denying recovery,[11] more recent cases allow such costs and are in line with the policy, discussed earlier, of encouraging the injured party to make reasonable efforts to avoid loss. *Campbell Soup Co.* v. *Darling Transfer, Inc.*, 193 F.Supp. 408, 409 (D. Neb. 1961). *Vacco Indus., Inc.* v. *Navajo Freight Lines*, 63 Cal. App. 3d 262, 273-274 (1976), cert. denied, 431 U.S. 916 (1977). *Meletio Sea Food Co.* v. *Gordons Transports, Inc.*, 191 S.W.2d 983, 986 (Mo. Ct. App. 1946).

d. We agree with the defendant's claim that a small portion of the $25,000 damages awarded to the consignor was excessive. The evidence did not support an award of $25,000 for its damages, as the evidence most favorable to the plaintiff only related to the amount claimed on its two claim forms ($12,198.19 + $10,065.25 = $22,263.44), except perhaps for an unproven and inconsequential amount for additional telephone expenses. In addition, the purchase price the plaintiff had received from the consignee included an installation fee of $1,520, which should have been credited against Donut's claims for installation and repairs. The damages awarded to the consignee, which were obviously based on the purchase price, included the fee for installation costs.

We have considered the defendant's other claims and find them without merit.

Where the evidence is insufficient to support the verdict, a remittitur is required. *Davidson* v. *Robie*, 345 Mass. 333, 341-342 (1963). Accordingly, the matter is remanded to the Superior Court for the entry of an appropriate order granting the defendant a new trial unless the plaintiff accepts a remittitur in the amount of the excess over the sum of its two filed claims and also remits the installation fee. Mass.R.

---

[11] See, e.g., *Western Mfg. Co.* v. *The Guiding Star*, 37 F.Supp. 641, 646 (S.D. Ohio 1889); *E.H. Emery & Co.* v. *Chicago, B. & Q. Ry.*, 186 Iowa 1156, 1165 (1919).

Civ.P. 50(c), 365 Mass. 815 (1974). Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974). *D'Annolfo* v. *Stoneham Housing Authy.*, 375 Mass. 650, 657-662 (1978). *Moran Travel Bureau, Inc.* v. *Clair, post* 864 (1981).

*So ordered.*